**UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE ) | |
| ) | **Case No. 08-02810-TLM** |
| LAURIE VAUGHN, ) | |
| ) | **Chapter 7** |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**BACKGROUND AND FACTS**

On December 10, 2008, Laurie Vaughn ("Debtor") filed her chapter 7 voluntary petition for bankruptcy relief, listing her marital status as single. On February 4, 2009, Debtor filed a reaffirmation agreement with Capital Educators Federal Credit Union, reaffirming a debt on a 2005 Honda CR-V with monthly payments of $405.39. *See* Doc. No. 25.[1]

On February 16, 2009, Debtor filed another reaffirmation agreement, this one with Wells Fargo Bank, N.A., Wells Fargo Auto Finance ("Wells Fargo"), attempting to reaffirm a debt on a 1999 Ford F350 Pickup, reducing the monthly payments from $429.02 to $175.00 per month. *See* Doc. No. 27. However, the "Certification of Debtor's Attorney" in Part C was not properly completed and

---

[1] Because this reaffirmation agreement was with a credit union, it required no Court review or approval. *See* § 524(m)(2).

MEMORANDUM OF DECISION - 1

Debtor did not complete Part D, "Debtor's Statement in Support of Reaffirmation Agreement." *Id.* Based on these omissions, the Court set the matter for hearing on March 30, 2009. *See* Doc. No. 33.

Prior to the March 30, 2009 hearing, Debtor filed an amended reaffirmation agreement. *See* Doc. No. 34. In the amended reaffirmation agreement, Debtor improperly checked the box asserting no presumption of undue hardship existed and Debtor's attorney improperly completed Part C making a similar certification because Debtor's completed Part D indicated the opposite. *Id.* It asserted Debtor's income was $1,875.00 and her expenditures, not including the reaffirmed debt, were $3,965.00, thus leaving no money to make the proposed payment to Wells Fargo. By the very language of the form, this created a presumption of undue hardship. Debtor then attempted to explain in Part D how the presumption was rebutted, stating that "I have revenue from my husband, who has not filed a bankruptcy, and the funds are available from him to pay Wells Fargo Auto Finance." *Id.*

Neither Debtor nor her counsel appeared at the scheduled March 30, 2009 hearing. Doc. No. 36 (minute entry). The Court continued the hearing on the proposed reaffirmation agreement to April 13, 2009. At the April 13 hearing, both Debtor and her counsel appeared. Debtor represented at that hearing that she was married at the time the bankruptcy was filed, that listing her marital status as

"single" on schedule I was an error, and that her husband's income could cover the proposed payment to Wells Fargo.

The Court instructed counsel to amend Debtor's schedules to accurately reflect her marital status and disclose her husband's income and to amend the reaffirmation agreement to accurately reflect the funds available to make the proposed payment.

Debtor filed a second amended reaffirmation agreement, Doc. No. 40, checking the box that a presumption of undue hardship existed. However, her counsel failed to complete Part C. Part D was also altered to assert Debtor had $2,300.00 in income and $2,475.00 in expenses (not including the reaffirmed debt) and again stating Debtor's husband had sufficient revenue to make the $175.00 payment.

Debtor then filed amended schedules I and J. *See* Doc. No. 42. However, Debtor's amended schedules still list Debtor as "single." Debtor's amended schedule I eliminates any deduction for payroll taxes and social security but otherwise remains the same as before. It does not list a spouse; it does not name an employer for the spouse; it does not show any income for a spouse. Debtor's amended schedule J reduces several expenses – electricity, telephone, internet/cable, food, medical, transportation and installment auto payments – cutting out approximately $1,000.00 in expenses.

MEMORANDUM OF DECISION - 3

Debtor also filed an affidavit stating that "all income from my husband, Dwayne, is deposited directly into the business, Vaughn, Inc." and "all income from Vaughn, Inc. has been reported on Amended Schedules filed April 27, 2009." Doc. No. 43.

On May 15, 2009, Debtor filed a second amended schedule J, further reducing her auto installment payments to $330.98, leaving $79.02 in disposable income based on Debtor's most recent schedules I and J.

## DISCUSSION AND DISPOSITION

### A. Inadequacy of amended schedules

Debtor's amended schedules I and J are inaccurate and inadequate.

The Court instructed Debtor to amend her schedules to reflect her husband's income and correct errors. Federal Rule of Bankruptcy Procedure 1007(b)(1) requires use of the official bankruptcy forms and Official Form 6I, schedule I, instructs that "[t]he column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed . . .." *See also In re Reeves*, 327 B.R. 436, 441-42 (Bankr. W.D. Mo. 2005) (explaining the need to have Debtor's non-filing spouse's income reported); *In re Couch-Russell*, No. 02-03719, 2004 WL 4960379 (Bankr. D. Idaho Mar. 5, 2004) (citing *Moen v. Hull (In re Hull)*, 251 B.R. 726 (9th Cir. BAP 2000), and emphasizing the need to accurately disclose the non-debtor spouse's

MEMORANDUM OF DECISION - 4

income on debtor's schedules). Debtor's amended schedule I does not disclose a spouse, let alone any income for her spouse. While Debtor's affidavit states that any income from her husband is reflected as income from the business, such an affidavit is not an adequate alternative to accurate disclosure in schedule I, which is a mandatory Official Form. Moreover, the affidavit does not inform the Court, the trustee, or creditors as to who employs the non-debtor spouse or how much income he receives or contributes to the business.

In addition to the problems with Debtor's amended schedule I, Debtor's second amended schedule J is not accurate. Debtor reduced her installment auto payments to a total of $330.98. Yet Debtor has entered into a reaffirmation agreement with Capital Educators Federal Credit Union with a monthly obligation of $405.39. *See* Doc. No. 25.

Debtor will have fourteen (14) days to amend her schedules to accurately reflect her marital status, the income of both Debtor and her non-filing spouse, and her family's expenses.

### B.    Reaffirmation with Wells Fargo

Debtor's second amended reaffirmation agreement with Wells Fargo cannot be approved for a number of reasons.

First, Part C of the second amended reaffirmation was not properly completed by Debtor's counsel. As this Court noted in *In re Lyons*, Debtor's

MEMORANDUM OF DECISION - 5

counsel is required to make a declaration under § 524(k)(5) and, because there is a presumption of undue hardship shown on Part D, the form of certification under § 524(k)(5)(B) is required. *See In re Lyons*, No. 08-20588-TLM at Doc. No. 18 (Bankr. D. Idaho Nov. 18, 2008). With the presumption of undue hardship established by Part D of the reaffirmation agreement, and without an appropriate § 524(k)(5)(B) certification by counsel on Part C, there could be no approval by this Court.

Second, Debtor's attempt to rebut the presumption in Part D of the reaffirmation agreement by relying on her husband's earnings is vague and not supported by the record. As noted above, the actual amount Debtor's spouse earns is not disclosed. However, even if the Court were willing to accept Debtor's affidavit as an adequate alternative to a corrected schedule I, the presumption of undue hardship still has not been rebutted. According to the affidavit, Debtor's spouse can pay the $175.00 per month vehicle payment. Yet Debtor's affidavit also states that (i) *all* of her spouse's income is deposited into her business and (ii) the income from the business is correctly stated on schedule I. Schedule I shows $2,300.00 in total income, consistent with Part D of the reaffirmation agreement. Debtor's Part D then states that her "current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total

$2,475.00, leaving $0 to make the required payments on this reaffirmed debt."[2]  If Debtor's affidavit is correct that all of her spouse's income is included within the $2,300.00, then her spouse cannot afford to cover the $175.00 per month, and the Court cannot approve the reaffirmation agreement.

Based on the foregoing, Debtor's second amended reaffirmation agreement with Wells Fargo, Doc. No. 40, cannot be approved.

## CONCLUSION

The Court has identified and explained, and allowed multiple opportunities for Debtor and her counsel to correct, the patent errors in the reaffirmation agreement.  It remains flawed and approval of Debtor's reaffirmation agreement will be denied.

Debtor will also be required to amend her schedules to fix the inaccuracies and the inadequate disclosures.

The Court will enter a separate Order.

DATED:  May 27, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[2]  Actually these assertions indicate Debtor is $175.00 shy of covering her expenses before making the reaffirmed debt payment.  And, while Debtor further amended her schedule J, the inaccuracies in that amended schedule J regarding the auto installment payment expense noted above lead this Court to conclude those figures cannot be relied upon.

MEMORANDUM OF DECISION - 7